# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES A. CARSON, JR.,                  :
      Plaintiff                       :          No. 1:17-cv-01263
                                      :
v.                                     :          (Judge Kane)
                                      :
JESSICA M. AURAND, et al.,             :
      Defendants                      :

## MEMORANDUM

Before the Court is Defendant Jessica M. Aurand ("Defendant")'s motion for summary

judgment. (Doc. No. 30.) For the reasons that follow, the Court will grant the motion.

## I.      BACKGROUND[1]

---

[1] The facts recited herein are derived from Defendant's statement of material facts (Doc. No. 32), and are deemed undisputed in all material respects. Where Plaintiff has asserted an improper response to a factual assertion, the Court deems the given factual statement admitted. See Fed. R. Civ. P. 56(e) ("If a party fails to properly . . . address another party's assertion of fact . . . the [C]ourt may . . . consider the fact undisputed for purposes of the motion . . . ."); see also L.R. 56.1 ("Statements of material fact in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."). In a similar vein, where Plaintiff has admitted a factual assertion made by Defendant, yet qualifies his response with an additional statement beginning with "by way of further response," and, therefore, puts forth "additional factual assertions . . . not provided for in either the Federal Rules . . . or the Local Rules[,]" the Court "assigns those portions of the [record] no evidentiary value." See Rau v. Allstate Fire & Cas. Ins. Co., 3:16-cv-0359, 2018 WL 6422121, at *2 n.1 (M.D. Pa. Dec. 6, 2018), appeal docketed, Rau v. Allstate Fire & Cas. Ins. Co., 19-1078 (3d Cir. Jan. 9, 2019).

In connection with his response to Defendant's statement of material facts, Plaintiff also filed his own statement of facts (Doc. No. 36-2), to which Defendant filed a response (Doc. No. 39). The Local Rules of this Court, however, do not authorize a non-moving party to file a statement of facts in connection with a motion for summary judgment, and, therefore, Plaintiff's statement of material facts (Doc. No. 36-2), does not comply with Local Rule 56.1, which contemplates only that a party opposing a motion for summary judgment file a statement of facts "responding to the numbered paragraphs set forth" in the moving party's statement of facts. See L.R. 56.1. Accordingly, the Court will disregard Plaintiff's additional factual assertions, and will consider only Plaintiff's numbered responses to Defendant's statement of material facts, in accordance with Local Rule 56.1, as well as the relevant evidence of record cited by both parties. See Sash v. Hogsten, No. 07-0475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (providing that L.R. 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the nonmoving party how to properly respond to the movant's statement of

Plaintiff James A. Carson, Jr. ("Plaintiff") is an adult currently residing in Harrisburg, Pennsylvania. (Doc. No. 32 ¶ 1.) Defendant "is currently employed by the Mifflin County Regional Police Department" ("MCRPD") as a detective, and "has served in that capacity since 2005." (Id. ¶ 2.) Defendant was employed in this capacity at the time of the events giving rise to this case. (Id. ¶ 3.) In the course of her employment as the only detective with the MCRPD, Defendant "handles all the child abuse cases for the MCRPD, which involves hundreds of cases each year" (id. ¶ 5), and in doing so, "works with County agencies, like the Children's Resource Centers, Mifflin County Children and Youth, and the Mifflin County District Attorney's Office, to investigate suspected child abuse" (id. ¶ 6). On March 10, 2015, Plaintiff was arrested as a result of an investigation conducted by Defendant as to alleged child abuse. (Id. ¶ 3.)

In October of 2013, "Plaintiff's nephew, and the nephew's [then] [six]-year old daughter, S.W." ("S.W."), lived with Plaintiff and his girlfriend ("Ms. Jones") at her home in Mifflin County. (Id. ¶ 12.) The nephew stayed at this residence for roughly one month, and when he left the home, he left S.W. in their care. (Id. ¶¶ 13-14.) Plaintiff then "contacted Mifflin County Children and Youth to advise the agency that S.W. would be residing with him and Ms. Jones" because the agency was "already investigating him of suspected sexual abuse of his own child." (Id. ¶¶ 15-16.) Mifflin County Children and Youth subsequently informed Plaintiff "that S.W. could not remain in his care because of the [ongoing] sexual abuse investigation against Plaintiff." (Id. ¶ 17.)[2] On approximately November 1, 2013, "Mifflin County Children and Youth removed S.W. from the care of Plaintiff and Ms. Jones." (Id. ¶ 19.) On or about the same

---

material facts"); Dreibelbis v. Young, No. 06-2055, 2007 WL 4344120, at *2 (M.D. Pa. Dec. 10, 2007) ("[B]ased on the plain language of Local Rule 56.1, Plaintiff's filing of his own Motion and Statement of Material Facts is not technically sufficient to either oppose Defendants' Motion or deny Defendants' Statement of Material Facts.").

[2] "At this time, Plaintiff did not have custody of his children and was subject to supervised visits." (Doc. No. 32 ¶ 18.)

date, Mifflin County Children and Youth Services contacted S.W. at her school "at the request of the Dauphin County Children and Youth Services" because S.W. "did not return to Harrisburg, Pennsylvania with her father," at which time a "Safety Assessment worksheet was completed." (Doc. No. 36-6 at 22: 5-11.)  The worksheet stated that "there are no allegations or reasons to believe that the child sexual abuse has or is likely to occur."  (Id. at 22: 12-14.)[3]

Subsequently, during the year 2014, S.W. made certain disclosures to Dauphin County Children and Youth Services regarding sexual abuse by her family members.  First, on approximately February 21, 2014, she "disclosed . . . that she had been sexually assaulted by her father."  (Id. at 22: 15-18.)  This alleged abuse occurred prior to October of 2013, and the records related to this allegation do not refer to Plaintiff.  (Id. at 22: 20-22.)  Additionally, on or about December 11, 2014, S.W. made another report of sexual abuse to Dauphin County Children and Youth Services, which did not refer to Plaintiff (id. at 22: 23-25, 23:1), but rather, implicated S.W.'s mother (Doc. No. 36-3 at 28:1-5).

On January 7, 2015, Defendant "received a Report of Suspected Child Abuse from the Mifflin County Child[ren] and Youth involving a minor victim, S.W., and an alleged perpetrator, [Plaintiff]."  (Doc. No. 32 ¶ 20.)[4]  In pertinent part, the Report named S.W., a seven-year old female, as the victim (id. ¶ 21), and "listed the alleged perpetrator as [Plaintiff], the [forty-two]-year old paternal uncle of S.W" (id. ¶ 22).  "The narrative section of the Report detailed that S.W. reported that [Plaintiff] 'humped her' while she was in his custody during the period

---

[3] The Safety Assessment worksheet was discussed in Plaintiff's trial proceedings, the relevant portions of which were submitted as part of the record in this case.  (Doc. No. 36-6.)  While the Court cites all relevant documents herein using the applicable ECF page numbers, the Court notes that, for purposes of citing the transcripts from Plaintiff's state criminal trial (Doc. No. 36-6), and Plaintiff's preliminary hearing in the criminal case (Doc. No. 36-5), the Court cites the relevant page numbers provided on the original copy of each document, rather than the ECF page number.

[4] The Court refers to this document as "the Report" herein.

10/15/2013 to 11/5/2013." (Id. ¶ 23.) After receiving the Report, Defendant "commenced a police investigation of the suspected sexual abuse of S.W." (Id. ¶ 24.)

On January 22, 2015, "Mifflin County Children and Youth scheduled a forensic interview and medical examination of S.W." at the Lancaster County Children's Alliance (id. ¶ 25), and this type of examination is an established practice in the course of a child abuse investigation (id. ¶ 26). Defendant attended the interview, "along with individuals from several other county agencies, including Mifflin County Children and Youth." (Id. ¶ 27.) S.W. made the following statements during the interview:

    a. She went to Uncle James' house with her dad when she was 6 years old[;]

    b. While at Uncle James' house, "Uncle James humps me at night" "using his weiner"[;]

    c. She was alone when Uncle James entered the room where she was sleeping[;]

    d. Uncle James pulled down her pants and underwear[;]

    e. Uncle James had his pants pulled down[; and]

    f. Uncle James used his "weiner" to touch her "butt" and it "felt bad." Uncle[] James' "weiner" touched "inside of my butt."

(Id. ¶ 28.) Additionally, Defendant testified that during this interview, S.W. described the abuse as occurring on a "[h]ot summer night." (Doc. No. 36-3 at 57: 4-5.) Dauphin County Children and Youth subsequently "confirmed that [] S.W. was in Plaintiff's custody for the period [of] October 15, 2013 through November 5, 2013." (Doc. No. 32 ¶ 29.)

In Defendant's view, "S.W. appeared very matter of fact during her interview and relayed detailed information concerning alleged sexual abuse by Plaintiff." (Id. ¶ 30.) Additionally, Defendant observed that the fact that the alleged abuse occurred

approximately two years prior was not unusual because children "do not always report all abuse at one time" (id. ¶ 31), and Defendant "determined S.W. to be credible" (id. ¶ 32). The medical examination of S.W. that was administered in connection with the interview "neither proved nor disproved that she was sexually abused[,]" and in Defendant's assessment, "it is not uncommon that there is no definitive finding of physical abuse." (Id. ¶¶ 33-34.) Defendant also reported that it was unsurprising that the examination did not suggest physical abuse because the alleged abuse occurred approximately two years prior to the examination. (Id. ¶ 36.) The Lancaster County Children's Alliance "prepared a report and supplied a copy of the interview and its report to [Defendant] and the Mifflin County District Attorney's Office." (Id. ¶ 33.)

Defendant was then advised by a Dauphin County Children and Youth caseworker "that S.W.'s father had been convicted of abuse-related charges based upon S.W.'s accusations and her mother was awaiting trial based upon S.W.'s allegations of abuse." (Id. ¶ 37.) In addition, Defendant had "remained in contact with Mifflin County Children and Youth[,] who interviewed Plaintiff and Ms. Jones several times about S.W.'s abuse allegations." (Id. ¶ 38.) Both Plaintiff and Ms. Jones denied the allegations against Plaintiff (id. ¶ 39), and Mifflin County Children and Youth informed Defendant to that effect (id. ¶ 40). Moreover, Defendant communicated with Mifflin County Children and Youth "about S.W.'s allegations of sexual abuse prior to filing criminal charges against him." (Id. ¶ 41.) Defendant testified that when she investigated S.W.'s allegations of abuse by Plaintiff, she was informed of the previous allegations of abuse

involving S.W.'s parents, but that she was unaware of any other allegations. (Doc. No. 36-4 at 28: 1-8.)[5]

In the course of her investigation of Plaintiff based on S.W.'s allegations, Defendant "routinely consulted with the Mifflin County District Attorney . . . to advise him of the results of her [ongoing] investigation." (Id. ¶ 42.) The District Attorney, David W. Molek ("District Attorney Molek") "provided final approval before filing the application for [an] arrest warrant against Plaintiff with the District Magistrate" (id. ¶ 43), and "approved the filing of the following criminal charges against Plaintiff: Rape of a Child, 18 Pa.C.S. § 3121(c); Statutory Sexual Assault, 18 Pa.C.S. § 3122.1(b); Involuntary Deviate Sexual Intercourse; 18 Pa.C.S. § 3123(b); and Aggravated Indecent Assault on a Child, 18 Pa.C.S. § 3125(b)" (id. ¶ 44). The criminal complaint as to Plaintiff, dated February 27, 2015 (Doc. No. 36-8 at 5), was accompanied by an affidavit of probable cause, which reads, in pertinent part, as follows:

---

[5] The relevant portion of Defendant's deposition reads as follows:

> [Q.] Now, according to my client, this child had a history of making allegations about similar type of molestation by her father, and I guess her brother, and now, of course, [Plaintiff]. Was that part of your investigation?

> A. Yes and no. When we went down to the Children's Alliance for the interview, there was a caseworker from Dauphin County Children and Youth present. Because they actually, I believe, had custody of [S.W.]. So they were present for the interview as well.

> And he told me that there [were] allegations against dad and mom, and that the dad was already in jail for that, and that the mom was awaiting trial. So I knew about those allegations and the outcomes. But I did not know about any other allegations.

(Doc. No. 36-4 at 27: 12-25, 28: 1-8.)

On 22 January 2015 a 7 [year-old] female juvenile, hereafter referred to as the Juvenile, was interviewed at the CAC in Lancaster County. The Juvenile stated that she is currently living in Lancaster with her foster parents.

The Juvenile stated that she went to Uncle James' (James Carson) house with her dad. The Juvenile stated that, "this is my memory[.]" She went to Uncle James' house many years ago, "I was 5." She stated that Uncle James humped her at night. This is the word she uses for sexual intercourse. The Juvenile stated that she was alone when Uncle James came in the room and "he humped me with [his] weiner." It was a hot summer day, auntie was in her room and Uncle James' two sons were home at [the] time also. The Juvenile stated that she had fallen asleep there. When she woke up her clothes were off, Uncle James pulled off her pants and underwear. Uncle James had his pants pulled down. Then he humped her, "that's all." The Juvenile stated that Uncle James' weiner touched her butt cheek and it felt bad. The Juvenile stated that he does it every time with his wife. The Juvenile stated that it touched the outside and the inside of her butt.

. . .

The Dauphin County CYS Caseworker present stated that the Juvenile has been in placement since November 2013. He stated that the Juvenile was placed in the custody of her paternal uncle James Carson during the dates 15 October [2013] to 5 November [2013].

(Id. at 6.)

An arrest warrant was issued as to Plaintiff on the same date (id. ¶ 45), and Defendant "authored an [i]ncident [r]eport detailing her police investigation of the alleged sexual abuse of S.W." (id. ¶ 46). A preliminary hearing was then held on May 15, 2015 (id. ¶ 47), during which Defendant was questioned about various aspects of her investigation of Plaintiff in connection with these charges, including, inter alia, the existence of any medical documentation of potential abuse as to S.W.[6]

---

[6] In this regard, Defendant's testimony on cross-examination proceeded as follows:

Q. In addition to observing the interview, did you conduct any further investigation into these allegations?

A. No.

Q. Okay. You didn't obtain any medical records?

A. No. There was nothing to – no medical records at that time.

At the hearing, the charges against Plaintiff "were held over for trial." (Doc. No. 32 ¶ 48.)

Defendant was ultimately tried before a jury in May of 2016 and found not guilty as to all

charges. See Commonwealth v. Carson, CP-44-CR-0000271-2015 (C.P. Mifflin Cty. May 19,

2016).[7]

Plaintiff initiated the above-captioned action on July 18, 2017 by filing a complaint in

this Court against Defendant, the Mifflin County Regional Police Department, Mifflin County,

---

Q. Are you aware of whether any medical examinations took place related to this investigation or any other similar investigation?

A. One took place in regards to a similar investigation several months prior to this interview, yes.

Q. And you did not obtain any records of the medical examination related to that?

A. I did not.

(Doc. No. 36-5 at 14:10-25.)

[7] A review of the trial transcript reveals that Defendant testified as to certain topics previously discussed during Plaintiff's preliminary hearing, including the existence of medical documentation of the alleged abuse. Specifically, Defendant testified on cross-examination, in pertinent part, as follows:

Q. And when there's an investigation related to allegations of sexual assault is there a – is there ever any medical evaluations that are done?

A. Yes.

Q. Alright. And at any point related to sexual allegations was that done in this case?

A. Yes.

Q. And prior to filing the charges in this case did you obtain any of that information?

A. Yes.

Q. And in that information there – there was – there was no information that you obtained from there that was offered in the Affidavit of Probable Cause to support the charges against [Plaintiff]; correct?

A. Correct.

Q. And based upon the information that you already identified contained within the Affidavit of Probable Cause from the January 22, 2015 interview you filed these charges against [Plaintiff] on February 27th of 2015; correct?

A. Yes.

(Doc. No. 36-6 at 60:1, 61:1-20.)

and "John Does 1-10" for malicious prosecution in violation of the Fourth Amendment to the United States Constitution, made actionable pursuant to 42 U.S.C. § 1983, and under Pennsylvania state law. (Doc. No. 1.)[8] After Defendant Mifflin County moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 13), Plaintiff filed an amended complaint on September 19, 2017 (Doc. No. 14), naming Defendant only in her individual capacity and "John Does 1-10," and setting forth one count of malicious prosecution as a result of Defendant's "wrongful conduct in subjecting Plaintiff to loss of liberty and freedom in violation of the Fourth Amendment to the United States Constitution and [s]tate law" (id. at 4-5). In his amended complaint, Plaintiff alleges, inter alia, the following:

> 12. Through the course of 2014, [S.W.] notified [Dauphin County Children and Youth Services ("DCCYS")] on multiple occasions that she had been sexually assaulted. Initially, [S.W.] identified her father as the sexual assailant. In time, [S.W.'s] facts changed and she named her brother instead as the sexual assailant. This also changed to her mother's brother as the sexual assailant. At no time during the course of 2014, did [S.W.] accuse Plaintiff of being the sexual assailant.

> 13. In or around January 2015, [S.W.'s] facts changed a fourth time to name Plaintiff as the sexual assailant.

> 14. [S.W.] was medically examined to determine the extent of the damage done to her body by the sexual assault. However, no evidence of an assault or previous intercourse, nor damage to [S.W.'s] body was discovered.

> 15. On March 10, 2015, Plaintiff was detained and incarcerated for allegations of sexual assault against [S.W.].

---

[8] While Plaintiff still asserts the instant malicious prosecution claim against these "John Doe" defendants, because there is no indication that discovery has revealed any additional defendants other than the named Defendant, Detective Aurand, the Court considers the malicious prosecution claim only as to Detective Aurand and will direct that the John Doe defendants be terminated from the caption of the case. See, e.g., Parks v. Edinger, 1:13-cv-01834, 2016 WL 687995, at *3 n.3 (M.D. Pa. Feb. 19, 2016) (citing Sheetz v. Morning Call, 130 F.R.D. 34 (E.D. Pa. 1990) ("It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants.").

16. Plaintiff was held in prison for two hundred and forty (240) days, awaiting trial.

17. On December 3, 2015, the Court determined that the Plaintiff was not a flight risk and ordered he be held under house arrest and on electronic monitoring while awaiting trial.

18. Trial was held on May 19, 2016 and Plaintiff was acquitted of all charges.

19. During trial, [Defendant] admitted that she wrote the affidavit of probable cause based solely on DCCYS' interview with [S.W.].

20. At all material times, [Defendant] was aware of [S.W.'s] previous accusations and routine changes in her facts.

21. At all material times, [Defendant] was aware of the aforementioned medical examin[ation] and resulting lack of evidence.

22. At all material times, [Defendant] was aware of [S.W.'s] significant lack of credibility.

23. Upon information and belief, [Defendant] did not provide the Court a copy of the medical examin[ation] at the Preliminary Hearing.

24. During trial, [Defendant] also admitted that she did not conduct any further investigation, beyond reviewing the interview and medical examin[ation].

25. [Defendant] did not interview any other witnesses and did not interview Plaintiff prior to the arrest.

(Doc. No. 14 at 3-4.) Defendant filed the instant motion for summary judgment in June of 2018 (Doc. No. 30), and having been fully briefed (Doc. Nos. 31, 36, 38, 43), the motion is ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs the grant of summary judgment. Parties may move for summary judgment on particular claims or defenses, or on a part of each claim or defense. See Fed. R. Civ. P. 56(a). "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Id. "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted).

In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." See Fed. R. Civ. P. 56(c)(1)(A). "The non-moving party cannot rest on mere pleadings or allegations," El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). The Court "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and will grant the motion only "if no reasonable juror could find for the non-movant." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).

## III.    DISCUSSION

### A.    Applicable Legal Standards

#### 1.    Claim Asserted Pursuant to 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law;  and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### 2.  Malicious Prosecution[9]

The United States Court of Appeals for the Third Circuit has stated that, in order to succeed on a Fourth Amendment malicious prosecution claim pursuant to Section 1983, a plaintiff must satisfy the following elements:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in [the plaintiff's] favor;
> (3) the defendant initiated the proceeding without probable cause;
> (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014) (alteration in original) (quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)).[10]

---

[9] For purposes of Plaintiff's malicious prosecution claim under the Fourth Amendment, the Court recognizes that the Fourth Amendment applies to the conduct of state officials by operation of the Fourteenth Amendment.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

[10] In his single-count amended complaint, Plaintiff sets forth a claim for malicious prosecution "in violation of the Fourth Amendment to the United States Constitution and [s]tate law."  (Doc. No. 14 at 5.)  A claim for malicious prosecution under Pennsylvania law "requires [] [P]laintiff

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)). "Generally, 'the question of probable cause in a [S]ection 1983 damage suit is one for the jury.'" Id. (quoting Montgomery v. De Simone, 150 F.3d 120, 124 (3d Cir. 1998)). "This is particularly true where the probable cause determination rests on credibility conflicts." Id. (citing Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997); Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984)). "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to [the] [p]laintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." Id. at 788-789 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). "As long as the officer[] had some reasonable basis to believe [the plaintiff] had committed a crime, the arrest is justified as being based on probable cause[,]" and "[p]robable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citing Edwards v. City of Phila., 860 F.2d 568, 575-76 (3d Cir. 1994)).

---

to show all but the fifth element (deprivation of liberty)." See Thomas v. City of Phila., 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)); see also Merkle, 211 F.3d at 791 ("In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996))). Accordingly, the Court analyzes the propriety of summary judgment as to Plaintiff's malicious prosecution claims under both federal and state law, and because the claims share all but one element, which is not in dispute for purposes of resolving Defendant's motion, the Court analyzes the claims coextensively.

Because the cause of action for malicious prosecution "hinge[s] on probable cause, the constitutional violation question . . . turns on whether 'a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time.'"  See Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (internal quotation marks omitted) (quoting Blaylock v. City of Phila., 504 F.3d 405, 411 (3d Cir. 2007)).  When the plaintiff was arrested pursuant to a warrant, it is proper for the Court to "focus[] its probable cause analysis on whether [the defendant] 'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for the warrant.'"  See id. (third alteration in original) (internal quotation marks omitted) (quoting Sherwood, 113 F.3d at 399).  Accordingly, the Court is concerned with "two elements: first, whether the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause."  See id. (alteration in original) (internal quotation marks omitted) (quoting Dempsey v. Bucknell Univ., 834 F.3d 457, 468-69 (3d Cir. 2016)).

The United States Court of Appeals for the Third Circuit has held that "omissions are made with reckless disregard if an officer withholds a fact in his ken" such that "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know."  See Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)).  An assertion, though, "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'"  See id. (quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).  "Once [the Court] determine[s] whether an omission or assertion was made with reckless disregard for the truth, the

plaintiff must proceed to the second prong of this two-step paradigm, which tasks him to prove that inclusion or exclusion, respectively, of the information recklessly disregarded would have negated a finding of probable cause." Meketa v. Kamoie, 955 F. Supp. 2d 345, 356 (M.D. Pa. 2013) (citing Wilson, 212 F.3d at 786-87).

A viable malicious prosecution claim also requires that the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. "Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights." Bristow v. Clevenger, 80 F. Supp. 2d 421, 435 (M.D. Pa. 2000) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988); Hugee v. Pa. R. Co., 101 A.2d 740, 743 (Pa. 1954)). "Additionally, malice may be inferred from the absence of probable cause." Id. (citing Kelley v. Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988); Hugee, 101 A.2d at 743); see also Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993) (recognizing that a factfinder may "infer malice from the absence of probable cause").

### 3. Qualified Immunity

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). "Qualified immunity 'gives ample room for mistaken judgments' by shielding 'all but the plainly incompetent or those who knowingly violate the law.'" Olson v. Ako, 724 F. App'x 160, 164 (3d Cir. 2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "This accommodation recognizes [the] societal interest in law enforcement's pursuit of investigations unconstrained by the constant fear of being sued." Id. (citing Hunter v. Bryant, 502 U.S. 224, 229 (1991)). Consequently, an official is qualifiedly

immune unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct." See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Courts may begin their consideration with either prong." Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 236 (3d Cir. 2015)).

"A right is 'clearly established' for these purposes when its 'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (alteration in original) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). "It is not enough that the right is defined at a high level of generality; rather, '[t]he dispositive question is whether the violative nature of particular conduct is clearly established.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Mullenix v. Luna, __ U.S. __ at __ (2015)). As instructed by the United States Court of Appeals for the Third Circuit, when examining whether a constitutional right is clearly established, the Court must "look first for 'applicable Supreme Court precedent[]'" and, if there is none, the Court "consider[s] whether there is a case of controlling authority in [its] jurisdiction or a 'robust consensus of cases of persuasive authority' in the Court of Appeals [that] could clearly establish a right for purposes of qualified immunity." See id. (fourth alteration in original) (quoting Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016), as amended (Mar. 21, 2016)). "The authority need not be 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741).

B. **Arguments of the Parties**

1. **Defendant's Arguments in Support of Summary Judgment**

### i.    Arguments as to the Malicious Prosecution Claim

Defendant argues primarily that she is entitled to summary judgment on Plaintiff's malicious prosecution claim because: (1) Plaintiff's arrest was supported by probable cause (Doc. No. 31 at 11); (2) Defendant "did not omit or withhold exculpatory evidence" (id. at 14); (3) any inclusion of the alleged exculpatory evidence in the affidavit of probable cause would not vitiate the existence of probable cause to arrest Plaintiff (id. at 21); and (4) there is no evidence of malicious conduct on the part of Defendant.

As to her first point – that Plaintiff's arrest was supported by probable cause – Defendant cites portions of the record referring to, inter alia: the Report; S.W.'s identification of Plaintiff as her abuser during her forensic interview; S.W.'s detailed account of the abuse; Dauphin County Children and Youth's confirmation that S.W. was in Plaintiff's custody from October 15, 2013 to November 5, 2013; and the physical examination of S.W. that "neither proved nor disproved that [S.W.] was sexually abused." (Id. at 11.)  Defendant asserts that in light of the offenses with which Plaintiff was charged (id. at 12), "[t]he information known by [her] was more than sufficient to warrant a reasonable person to believe that the . . . charges had been committed by Plaintiff" and "[t]hat Plaintiff was ultimately acquitted is completely immaterial" to the Court's probable cause determination (id. at 13).  Additionally, Defendant points to the fact that during Plaintiff's preliminary hearing on May 15, 2015, "all charges against him were held over for trial" as indicative of the presence of probable cause.  (Id.)

In support of her argument that she did not omit or withhold exculpatory evidence in obtaining an arrest warrant as to Plaintiff (id. at 14), Defendant asserts that Plaintiff does not have a constitutional right "to a preferred investigation," and the relevant legal standard requires this Court to examine only "whether the information possessed by the office amounted to

probable cause[,] not what information the officer might have obtained if she had only looked a bit harder" (id. at 14-15). Moreover, Defendant rebuffs the contention that "she should have interviewed Plaintiff and other 'material witnesses' before filing charges" on the grounds that "[i]t is well-settled that probable cause may be based on a single and reasonably reliable witness" (id. at 15-16), and "[a]fter probable cause is established[,] an officer is not required to continue to investigate" (id. at 16) (citing case law). Additionally, Defendant states that even if she made an omission as to her investigation of Plaintiff, "[t]he undisputed evidence of record fails to establish that [she] knowingly and deliberately, or with a reckless disregard for the truth, made omissions that created any falsehood in filing criminal charges or applying for the warrant." (Id. at 17.)

Further, Defendant states that even if she had intentionally omitted the information referred to by Plaintiff, "the presence of this information would not have defeated a finding of probable cause." (Id. at 18.) Specifically, Defendant states that there was no "falsehood in filing criminal charges or applying for the warrant" as a result of "not including S.W.'s medical examination results in the affidavit of probable cause" and, additionally, "the medical examination results did not constitute exculpatory evidence because [the examination] neither proved nor disproved that S.W. was sexually abused." (Id.)[11] As to Plaintiff's allegation that she withheld exculpatory evidence regarding S.W.'s previous abuse allegations, Defendant states that "[a]s a matter of law, [she] could rely only upon S.W.'s statement and her identification of Plaintiff as the abuser to establish probable cause[,]" and that "[o]ther than his own self-serving testimony, Plaintiff has not provided any evidence that information concerning S.W.'s prior

---

[11] Defendant also asserts that because "the alleged abuse had occurred in 2013, two years before [S.W.'s] examination in January [of] 2015 . . . the lack of evidence of physical trauma was not surprising" and "[l]ikewise, the failure to reference it is not a material omission." (Doc. No. 31 at 18.)

sexual abuse allegations against other individuals constituted exculpatory evidence that should have been included in the [a]ffidavit of [p]robable [c]ause." (<u>Id.</u> at 19.)  Defendant also rejects any argument from Plaintiff that she withheld exculpatory evidence pertinent to S.W.'s credibility as a witness, stating that "Plaintiff has not presented evidence that S.W. was not credible[,]" but rather, merely disagrees with Defendant's previous assessment of S.W. as "credible because she was very matter of fact during her interview and relayed detailed information about Plaintiff's abuse." (<u>Id.</u> at 20.)  Finally, Defendant states that "she did not withhold exculpatory evidence regarding witness interviews" in that she "did not have a duty to interview Plaintiff or any other witnesses once probable cause was established by S.W.'s identification of Plaintiff as her abuser" and, therefore, because "she was not required to conduct additional interviews, no information was omitted." (<u>Id.</u>)

Defendant also argues that, "[a]ssuming <u>arguendo</u>[,] that the information as detailed by Plaintiff is deemed by this Court to constitute exculpatory evidence that a magistrate would wish to consider, such information does not vitiate probable cause." (<u>Id.</u> at 21.)  In support of this point, Defendant asserts that "viewing a 'corrected' affidavit" reveals that "Plaintiff's [seven]-year old niece had been subjected to sexual abuse by multiple family members, including Plaintiff, whom she had specifically identified" and "Plaintiff has produced no evidence to undermine [the determination] that probable cause existed to arrest him." (<u>Id.</u> at 22.)  To that end, Defendant states that "[n]o matter how you view it, the undisputed facts show that there was a 'fair probability' that Plaintiff committed a crime." (<u>Id.</u>)

Further, Defendant states that in investigating and arresting Plaintiff, she "did not act maliciously or for a purpose other than bringing Plaintiff to justice" (<u>id.</u> at 23) because: (1) as noted previously, she "did not withhold exculpatory evidence"; (2) "there was no reason to

question whether the correct suspect had been arrested" because "the victim positively identified Plaintiff"; (3) Defendant "was not obligated to interview Plaintiff after he had already denied S.W.'s abuse allegations to Mifflin County Children and Youth"; and (4) "Plaintiff produced no evidence as to which 'material witnesses' [Defendant] allegedly failed to interview." (Id. at 24.) According to Defendant, therefore, "[t]he utter lack of evidence is fatal to his malicious prosecution claim, requiring the Court to grant summary judgment." (Id.)[12]

### ii.    Arguments as to Qualified Immunity

Defendant argues that, in the alternative, she cannot be held liable for malicious prosecution by operation of the doctrine of qualified immunity. (Id.) In support of this point, Defendant states that the undisputed evidence of record demonstrates that "no constitutional violation has been established," and "the evidence elicited does not support [the conclusion] that [Defendant's] actions were objectively unreasonable" because "there is no clearly established law that would have put her on notice that an arresting officer violated the Constitution if she relied upon the statement and identification of a credible minor victim and issued criminal charges after seeking and receiving approval from the District Attorney." (Id. at 26.) Further, Defendant argues, even if this Court concluded that she was mistaken in such a belief, she is still shielded from liability by qualified immunity because her actions "do not rise to the level of plainly incompetent, when viewing the circumstances presented to her as detailed in the relevant

---

[12] In a similar vein, Defendant asserts that "Plaintiff failed to present any evidence that [she] did anything other than her job to investigate the suspected sexual abuse and relay information to the District Attorney and Judge." (Id. at 24.) Additionally, Defendant states that, "[t]o the extent that Plaintiff's [a]mended [c]omplaint alleges a state law claim for malicious prosecution, like the federal claim, it turns [on] whether" Defendant "possessed sufficient probable cause to arrest him" and "[a]gain, Plaintiff [has] failed to establish evidence to support a reasonable inference that" probable cause was lacking. (Id. at 25.)

[a]ffidavit of [p]robable [c]ause." (Id.) Accordingly, Defendant asserts that she cannot be held liable for malicious prosecution because she is qualifiedly immune from liability in this case.

### 2. Plaintiff's Arguments in Opposition to Summary Judgment

#### i. Arguments as to the Malicious Prosecution Claim

In opposing Defendant's motion, Plaintiff maintains that genuine disputes of material fact preclude the entry of summary judgment in this case, specifically whether Defendant possessed probable cause to initiate the proceedings against him and whether Defendant acted with malicious intent. (Doc. No. 36 at 5-6.) First, Plaintiff asserts that Defendant lacked probable cause to initiate the given criminal proceeding against him (id. at 6), stating that she "omitted the following three pieces of critical information from her [a]ffidavit of [p]robable [cause]":

1. Defendant . . . knew, prior to completing her Affidavit of Probable Cause, that S.W. had previously identified two other individuals as her sexual assailant. . . . However, Defendant . . . failed to include this critical information in her Affidavit of Probable Cause.

2. Defendant . . . knew that S.W. alleged that the sexual abuse allegedly committed by Plaintiff occurred on a "hot summer night[.]" . . . However, Defendant . . . also knew that S.W. was only in Plaintiff's presence between October 15 and November 5, 2013, and thus completed her Police Criminal Complaint and Affidavit of Probable Cause alleging the abuse occurred between October 15 and November 5, 2013 despite the victim alleging it occurred on a "hot summer night[.]"

3. Defendant . . . knew, prior to completing her Affidavit of Probable Cause, that there was no supporting medical evidence; however, Defendant . . . failed to include that information in her Police Criminal Complaint or Affidavit of Probable Cause.

(Id. at 8-9) (citations omitted).

According to Plaintiff, this information should not have been omitted from the affidavit of probable cause because "any reasonable person would know that a judge would want to know that (a) the child victim had previously identified two other individuals as her sexual assailant;

(b) that the alleged timing of the sexual abuse did not occur while the alleged perpetrator had access to the alleged victim; and (c) that there was no supporting or corroborating medical evidence that the alleged sexual abuse even occurred." (<u>Id.</u> at 9) (internal quotation marks omitted).[13] Plaintiff additionally states that Defendant "should [] have known S.W. was not reliable because of the timing in which S.W. alleged the sexual abuse occurred," for "S.W. alleged that the sexual abuse . . . occurred on a hot summer night[,]" while S.W. was in Plaintiff's presence "between October 15 and November 5, 2013." (<u>Id.</u> at 10) (internal quotation marks omitted). According to Plaintiff, "[i]n combination with the changes in identification of the perpetrator" and absent "any other evidence, this additional fact [] extinguishes probable cause" because "it is clear the alleged victim is unreliable." (<u>Id.</u>)[14]

Further, Plaintiff contends that Defendant "lied to the Court during [] her testimony at the preliminary hearing." (<u>Id.</u> at 11.) Specifically, Plaintiff states that Defendant's testimony "that there were no medical records/reports concerning the alleged sexual abuse at the time she filed the [a]ffidavit of [p]robable [c]ause . . . was not true and Defendant knew so" in that "Defendant knew, at the time of her testimony, that a medical examination was performed on S.W. on . . . January 22, 2015" that "did not support S.W.'s allegations." (<u>Id.</u>) As to the element of Plaintiff's malicious prosecution claim requiring that Defendant "acted with malice and/or for a purpose other than bringing Plaintiff to justice[,]" Defendant "acted with implied malice" in that she arrested him without probable cause. (<u>Id.</u> at 12) (stating that under relevant case law,

_____

[13] Plaintiff also states that "[i]n the context of a six-year-old child, it is critically important that the magistrate know that the alleged child victim had previously identified two other individuals as her sexual assailant" and "that the alleged child victim has changed her story twice about such a crucial fact . . . goes to the core of the victim's credibility." (<u>Id.</u> at 9-10.)

[14] In addition, Plaintiff argues that "[p]robable cause is further extinguished if Defendant . . . had appropriately included the fact that the medical professional did not find any evidence of the alleged sexual abuse." (<u>Id.</u> at 10.)

"arresting an individual, without probable cause, is a malicious action done for a purpose other than bringing the individual to justice").  Additionally, Plaintiff states that questions of motivation and credibility as to this element are properly considered by the jury, rather than the Court, and, therefore, summary judgment is inappropriate.  (Id.)

### ii.    Arguments as to Qualified Immunity

Plaintiff argues that Defendant is not entitled to qualified immunity because "[i]t is well established that, in completing an [a]ffidavit of [p]robable [c]ause, an officer is not free to disregard exculpatory evidence, even when there exists substantial inculpatory evidence, standing by itself that suggest[s] probable cause exists."  (Id. at 13) (citing Dempsey v. Bucknell Univ., 834 F.3d 457, 468 (3d Cir. 2016)).  According to Plaintiff, when viewed in a light most favorable to Plaintiff, the non-moving party, "any reasonable officer would know that withholding from the magistrate the following information would be unlawful": (a) S.W.'s previous identification of two other individuals as her abuser; (b) a purported temporal discrepancy between the alleged abuse and the period during which S.W. was in Plaintiff's care or presence; and (c) a lack of "supporting or corroborating medical evidence of the sexual abuse."  (Id. at 13.)  In addition, Plaintiff states that "it is clear to any reasonable officer that lying under oath is unlawful."  (Id.)

### C.    Whether Defendant is Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim

Because Plaintiff has asserted a claim for malicious prosecution under the Fourth Amendment, the Court must determine whether there is a genuine dispute of material fact and whether Defendant is entitled to judgment as a matter of law on this claim.  As noted above, a malicious prosecution claim under the Fourth Amendment consists of five elements:

(1) the defendant initiated a criminal proceeding;

(2) the criminal proceeding ended in [the plaintiff's] favor;
(3) the defendant initiated the proceeding without probable cause;
(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Halsey, 750 F.3d at 296-97 (alteration in original) (quoting Johnson, 477 F.3d at 82).

In the case at bar, it is undisputed that the first, second, and fifth elements of a malicious prosecution claim are met in that: Defendant initiated the given criminal proceeding against Plaintiff; the proceeding ended in Plaintiff's favor when he was found not guilty on each of the charges; and Plaintiff, as a result of the proceeding initiated by Defendant, was deprived of liberty consistent with a Fourth Amendment seizure by means of his incarceration and period of home arrest prior to his acquittal. The only elements that have been called into question are the third and fourth elements: whether Defendant initiated the proceeding without probable cause and whether Defendant acted maliciously or for a purpose other than brining Plaintiff to justice, respectively.

To ascertain the existence of probable cause, the Court must determine whether, at the time of Plaintiff's arrest, "the facts and circumstances within [Defendant's] knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by [Plaintiff]." See Merkle, 211 F.3d at 788 (quoting Orsatti v. N.J. State Police, 71 F.3d at 482). Because Plaintiff alleges that Defendant made various omissions from the affidavit of probable cause and, therefore, acted without probable cause (Doc. No. 36 at 8-9), this Court must assess whether Defendant "(1) knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in [her] affidavit of probable cause that create[d] a falsehood in applying for an arrest warrant, and (2) [whether] such statements or

omissions are material to the finding of probable cause." See id. at 799 (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

For Defendant to have acted with probable cause, at the time of Plaintiff's arrest, "the facts and circumstances within [Defendant's] knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by [Plaintiff]." See Merkle, 211 F.3d at 788 (quoting Orsatti v. N.J. State Police, 71 F.3d at 482). Because Plaintiff alleges that Defendant made various critical omissions from the affidavit of probable cause and, therefore, acted without probable cause (Doc. No. 36 at 8-9), this Court must assess whether Defendant "(1) knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in his affidavit of probable cause that create[d] a falsehood in applying for an arrest warrant, and (2) such statements or omissions are material to the finding of probable cause." See id. at 799 (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)). The Court examines each alleged omission individually for purposes of this analysis. See, e.g., Meketa, 955 F. Supp. 2d at 356 (examining each omission in turn in discussion of claims for false arrest, false imprisonment, and malicious prosecution).

Having reviewed the record, the parties' arguments, and the applicable law, the Court finds that Defendant acted with probable cause in initiating the subject charges against Plaintiff, and, consequently, she is entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim. Accordingly, the Court addresses only the fourth element – a lack of probable cause – and need not address whether Defendant acted with malice, for the failure to demonstrate a lack of probable cause is fatal to Plaintiff's malicious prosecution claim. The Court also concludes that, even if it were to find a Fourth Amendment violation, Defendant

would be entitled to qualified immunity because the law was not clearly established so as to put Defendant on notice that she would be committing a constitutional violation.

### i. S.W.'s Previous Identifications of Two Other Individuals as Her Abuser

Plaintiff asserts that Defendant "knew, prior to completing her [a]ffidavit [o]f [p]robable [c]ause, that S.W. had previously identified two other individuals as her sexual assailant[,]" yet "failed to include this critical information in her [a]ffidavit of [p]robable [c]ause." (Doc. No. 36 at 8.) The relevant evidence of record suggests that Defendant was aware of S.W.'s prior reports of abuse wherein she named individuals other than Plaintiff as her abusers, and does not indicate that Defendant specifically accounted for the omission of this information in the affidavit. The Court finds, however, that the omission of this information from the affidavit was not material to the finding of probable cause. Even though S.W. may have previously identified other individuals as her abuser, she also positively identified Plaintiff as her abuser, and did so by providing a detailed and explicit account of the alleged abuse, as described supra, which Defendant found credible. (Doc. No. 32-6 at 56:11-18) (stating that she "had no reason to believe that [S.W.] wasn't credible"). S.W.'s identification of Plaintiff is significant because although the omission as to her previous identifications of other individuals "may have been useful as impeachment evidence at trial to challenge the accuracy of the identification[]" of Plaintiff, the omission "do[es] not negate probable cause given the circumstances here, which requires only a fair probability" that Plaintiff committed the crimes in question. See Shaffer v. City of Pittsburgh, 650 F. App'x 111, 115 (3d Cir. 2016) (internal quotation marks omitted); see also, e.g., Safa v. City of Phila., No. 2:13-cv-5007-DS, 2015 WL 3444264, at *13-14 (E.D. Pa. May 29, 2015) (concluding that while certain evidence available to a detective may have presented an issue of credibility, it "did not negate [the detective's] ability to rely on the

remainder of the evidence before him").  Further, Defendant testified that in her professional experience, it is conceivable for a child victim who might have experienced abuse by more than one individual to report each instance of abuse.  (Doc. No. 32-6 at 31:14-17) (stating "I supposed if she was sexually assaulted in the same manner for her to report it as it happens is not unusual").  In light of the information available to Defendant, and considering the account provided in the affidavit, as explained <u>supra</u>, the Court finds that this omission was immaterial to the existence of probable cause.  Accordingly, Defendant committed no constitutional violation for purposes of Plaintiff's malicious prosecution claim as it pertains to this omission challenged by Plaintiff.

### ii. Information Pertinent to the Timing of the Alleged Abuse

Plaintiff next posits that while Defendant "knew that S.W. alleged that the sexual abuse allegedly committed by Plaintiff occurred on a 'hot summer night[,]'" Defendant "also knew that S.W. was only in Plaintiff's presence between October 15 and November 5, 2013, and thus completed her Police Criminal Complaint and Affidavit of Probable Cause alleging that the abuse occurred between October 15 and November 5, 2013[,] despite the victim alleging it occurred on a 'hot summer night.'"  (Doc. No. 36 at 9.)  A review of the Affidavit of Probable Cause reveals that both the allegation about the abuse occurring on a "hot summer day" and the dates on which S.W. was in Plaintiff's custody – October 15, 2013 to November 13, 2013 – were included in the Affidavit.  (Doc. No. 36-8 at 6.)  Plaintiff's contention that the alleged discrepancy between this information constitutes an "omission," therefore, is questionable.  To the extent Plaintiff asserts that, despite this information being included in the affidavit, such a discrepancy negates the existence of probable cause more generally, the Court finds such an argument unpersuasive.  After being presented with this affidavit and following the preliminary

hearing, the magistrate judge ordered that the charges be held over for trial (Doc. No. 32-16 at 4), and while this fact does not, ipso facto, demonstrate the existence of probable cause, it is certainly probative for purposes of the instant probable cause analysis. See, e.g., Corliss v. Lynott, No. 3:15-cv-01364, 2016 WL 625071, at *8 n.8 (M.D. Pa. Jan. 5, 2016) ("While evidence of a holding over is not conclusive as to probable cause, an independent determination of probable cause, which was established at the preliminary hearing, constitutes weighty evidence of probable cause." (quoting Scheller v. Point Twp., No. 4-cv-13-0890, 2013 WL 8374681, at *11 (M.D. Pa. Nov. 4, 2013), report and recommendation adopted as modified, No. 4:13-cv-890, 2014 WL 1846648 (M.D. Pa. May 6, 2014))), report and recommendation adopted, No. 3:15-cv-1364, 2016 WL 613837 (M.D. Pa. Feb. 16, 2016). Additionally, S.W.'s purported statement that the abuse took place on a "summer" day is of little significance because it is plausible that a young child could remember an event that took place during the fall as occurring on a hot day and inadvertently refer to it as taking place over the summer. At bottom, this argument from Plaintiff is not relevant for purposes of assessing probable cause because it ultimately concerns the weight of Commonwealth's case at trial, and, like Plaintiff's identification of other individuals aside from Plaintiff, "do[es] not negate probable cause given the circumstances here, which requires only a fair probability" that Plaintiff committed the subject offenses. See Shaffer, 650 F. App'x at 115 (internal quotation marks omitted); see also Safa, 2015 WL 3444264, at *13-14 (commenting that while certain evidence may present credibility issues, it does "not negate [the detective's] ability to rely on the remainder of the evidence before him"). Because the Court is unconvinced that the purported discrepancy between the comment that abuse occurred on a "hot summer night" and the dates on which S.W.

was in Plaintiff's custody is sufficient to negate the existence of probable cause, Plaintiff has

failed to demonstrate that probable cause was lacking as it pertains to this temporal discrepancy.

### iii.     Information as to Medical Evidence of Abuse

Plaintiff also asserts that Defendant "knew, prior to completing her Affidavit of Probable

Cause, that there was no supporting medical evidence" to link Plaintiff to the abuse, but "failed

to include that information in her Police Criminal Complaint or Affidavit of Probable Cause."

(Doc. No. 36 at 9.)  The record indicates that no information regarding any medical examination

of S.W. was included in these documents.  (Doc. No. 36-8 at 5-6.)[15]  As explained with regard to

Plaintiff's other arguments regarding omissions, the Court finds that probable cause was already

established, as indicated by the relevant evidence of record regarding S.W.'s identification of

Plaintiff as her abuser, S.W.'s account provided in the forensic interview, and Defendant's

determination that S.W. was credible.  When considering these bases for probable cause, the

Court is unpersuaded that a "corrected affidavit" mentioning the inconclusive medical exam

would negate the existence of probable cause, especially in light of Defendant's testimony that

the inconclusive nature of such a report is not uncommon in instances where, like this case, the

alleged abuse occurred much earlier than when the medical examination was administered.

(Doc. No. 32-6 at 26:11-20) (responding in the affirmative when questioned as to whether an

inconclusive medical examination report is typical when the examination is conducted "two

years possibly after the fact").  To that point, Defendant specifically testified in her deposition

that "[c]hildren actually heal a lot quicker than adults do, so it's not atypical to not see injury –

---

[15] Further, at Plaintiff's trial, Defendant testified that prior to charges against Plaintiff being
filed, she obtained the medical examination as to S.W. (Doc. No. 36-6 at 61:4-9) and
acknowledged that none of the information obtained from the medical examination was included
in the Affidavit of Probable Cause (id. at 61:10-20).

physical injuries in a child" (id. at 26:7-11), and also stating that in her estimation, "more than

half the time" in the course of such investigations generally throughout the country, there is a

lack of physical evidence that would connect the victim and defendant (id. at 34:11:23). Further,

conspicuously absent from Plaintiff's briefing is any citation to authority supporting the

proposition that the omission of such a report renders the proceeding devoid of probable cause

(Doc. No. 36), and the Court is unaware of any such authority. Moreover, courts have

determined that probable cause existed in instances involving an inconclusive medical

examination. See O'Hara v. Hanley, No.08-cv-1393, 2011 WL 900033, at *2 (W.D. Pa. Mar.

14, 2011) (granting the defendant's motion for summary judgment on unlawful arrest and

malicious prosecution claims on the basis that no constitutional violation occurred, where, inter

alia, there was an inconclusive medical examination); see also Weaver v. Beveridge, 09-cv-2357,

2012 WL 7964544, at *15 (M.D. Pa. Sept. 12, 2012) (recommending that the defendant's motion

for summary judgment be granted as to malicious prosecution claim and noting in factual

recitation that alleged abuse victim "was also subjected to a medical exam, but this examination,

which occurred months after the alleged incident was inconclusive, and neither supported nor

refuted her allegations"), report and recommendation adopted, Weaver v. Beveridge, No. 09-cv-

2357, 2013 WL 1686636 (M.D. Pa. Apr. 18, 2013). Accordingly, the Court finds that Plaintiff

has failed to demonstrate the omission of information as to S.W.'s medical examination from the

criminal complaint and affidavit of probable cause demonstrates the absence of probable cause

on the part of Defendant.[16]

---

[16] To the extent that Plaintiff asserts summary judgment is improper because Defendant gave
inaccurate testimony as to the presence of medical records pertaining to the investigation at
Plaintiff's preliminary hearing, the Court is unpersuaded that this fact renders summary
judgment improper in light of the Court's reasoning explained herein regarding probable cause
and Plaintiff's failure to meet this element of his malicious prosecution claim.

### iv.    Qualified Immunity

In light of the foregoing, the Court concludes that Defendant is qualifiedly immune from liability as it pertains to Plaintiff's malicious prosecution claim.  First, as explained above, the Court finds that no Fourth Amendment violation occurred, and, therefore, Plaintiff is entitled to qualified immunity under the first prong of the governing analysis.  See Spady, 800 F.3d at 637 (citing Pearson, 555 U.S. at 232) (describing two-pronged analysis for determining whether a defendant is qualifiedly immune from liability).  Moreover, even if the Court were to find that a constitutional violation had occurred, Defendant would nonetheless be immune from liability because, in light of the record in this case and the applicable legal authority, the Fourth Amendment right at issue was not "clearly established" at the time of Defendant's alleged misconduct so as to put Defendant on notice that she was committing a constitutional violation. See id. (citing Pearson, 555 U.S. at 236).  Of note is the general admonition that qualified immunity is meant to apply to "all but the plainly incompetent or those who knowingly violate the law."  See Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 174 (3d Cir. 2017) (internal quotation marks omitted) (quoting Ashcroft, 563 U.S. at 743).  Considering the information reported to Defendant in the course of the investigation, and the Court's conclusion reached herein that Defendant did not act without probable cause, it is clear that in her investigation of Plaintiff, Defendant falls within neither of these categories, and to the extent one could view Defendant's investigation of Plaintiff as imperfect, this consideration does not alter the Court's disposition of the instant case.  See, e.g., Safa, 2015 WL 3444264, at *10 n.15 (E.D. Pa. May 29, 2015) (stating that "the mere fact that a police investigation could have been more thorough does not vitiate probable cause" (quoting Mitchell v. Obenski, 134 F. App'x 548, 551 (3d Cir.

2005))).  Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law as to Plaintiff's malicious prosecution claim.

## IV.     CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion for summary judgment. (Doc. No. 30.)  An appropriate Order follows.